# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **Hedstrom Corporation,** *et al.* | ) | **Case No. 04-38543** |
| | ) | **(Jointly Administered)** |
| Debtors. | ) | |
| | ) | **Hon. Jack B. Schmetterer** |

## FINAL ORDER AUTHORIZING DEBTORS TO:  (A) USE CASH COLLATERAL; (B) INCUR POSTPETITION DEBT; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO CONGRESS FINANCIAL CORPORATION (CENTRAL) AS LENDER

This matter came before this Court on the motion (the "Motion") of Debtors requesting that this Court enter an order: (1) authorizing Debtors to use certain Cash Collateral; (2) authorizing Debtors to incur Postpetition Debt; and (3) granting adequate protection and providing security and other relief to Congress Financial Corporation (Central) ("Lender").  Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in <u>Exhibit A</u> attached hereto and by this reference are made a part hereof.

Based on the affidavit filed, this Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, settled or overruled by the Court,

## THE COURT HEREBY FINDS THAT:

A.      On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code. Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B.      The Court has jurisdiction over the Case pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. § 1409(a).

C.      Debtors have stipulated and represented to the Court that: (1) the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship between Debtors and Lender; (2) as of the Filing Date, Debtors are liable to pay the Prepetition Debt, and, subject to Paragraph 7(a) herein, the Prepetition Debt shall be an allowed claim in an amount not less than $11,184,250.78;[1] (3) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents; (4) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law; (5) the Prepetition Liens, among other things, secures payment of all the Prepetition Debt; and (6) the Prepetition Liens are First Priority Liens (subject only to Permitted Liens).

D.      Upon the entry of this Order, (1) Lender's interest in the Prepetition Collateral will be adequately protected; and (2) Debtors have stipulated and represented to the Court that for purposes of Code §§ 506(b) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the liquidation value of the Primary Prepetition Collateral was not less than $15,000,000. Such findings and representations are made without prejudice to Lender's right to later: (1) assert that its interest in the Aggregate Collateral lacks adequate protection; and (2) seek a different valuation of the Primary Prepetition Collateral.

E.      A Committee has been appointed in this Case.

---

[1]      On November 15, 2004, Lender filed a proof of claim in the amount of $11,541,051.56.

F.    An immediate need exists for Debtors to use Cash Collateral and to incur Postpetition Debt to enable Debtors to liquidate their business operations in an efficient way and in a way that will maximize the value of their estates. Entry of this Order will enhance the possibility of a successful liquidation.

G.    Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the winding down of their businesses. Further, except as provided below, Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Lender.

H.    The terms of the Postpetition Debt have been negotiated in good faith and at arms' length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(c).

I.    Under the circumstances of the Case, the terms and conditions of this Order are a fair and reasonable response to Debtors' request for Lender's consent to the use of Cash Collateral and for Debtors' incurrence of Postpetition Debt, and the entry of this Order is in the best interests of Debtors' estates and their creditors.

J.    The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014 and Code §§ 102(1), 363 and 364(c) and were otherwise sufficient and appropriate under the circumstances.

K.    Prepetition Senior Lender is not objecting to the use of Cash Collateral pursuant to this Order.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, SUBJECT TO THE TERMS AND PROVISIONS OF THIS ORDER:**

1.    <u>Authorization to Use Cash Collateral</u>. Debtors are authorized to use Cash Collateral solely in accordance with and pursuant to the terms and provisions of this Order. Prior to the Termination Date and indefeasible payment in full of the Postpetition Debt, Debtors may not use or seek to use Cash Collateral other than pursuant to the terms of this Order.

2.    Procedure for Use of Cash Collateral.

(a)    Delivery of Cash Collateral to Lender.  Debtors are authorized and directed to deposit all Cash Collateral now or hereafter in their possession or under their control into the existing Blocked Accounts (or to otherwise deliver all such Cash Collateral to Lender in a manner satisfactory to Lender) promptly upon receipt thereof.  Lender shall thereafter apply such Cash Collateral in accordance with Paragraph 5(d) of this Order.

(b)    Account Debtors.  Without further order of Court, Lender may direct Debtors to, or Debtors may directly, instruct all account debtors of existing and future accounts receivable included in the Aggregate Collateral to make payments directly into such Blocked Accounts or such other accounts satisfactory to Lender, in which event all such proceeds shall be treated in accordance with the provisions of this Order.

(c)    Cash Collateral in Lender's Possession.  Lender is authorized to collect upon, convert to cash and endorse checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or under its control which constitute Aggregate Collateral or proceeds of Aggregate Collateral.

3.    Authorization To Incur Postpetition Debt.

(a)    Debtors are authorized to incur Postpetition Debt solely in accordance with and pursuant to the terms and provisions of the Prepetition Loan Agreement, this Order and to the extent required to pay those expenses enumerated in the Budget as and when such expenses become due and payable.  Notwithstanding anything to the contrary in this Paragraph 3, however:  (1) Debtors are hereby authorized and directed to incur the Postpetition Debt at any time to pay Allowable § 506(b) Amounts, including all accrued and accruing interest on the Prepetition Debt, the Carveout, and the Postpetition Charges, and (2) if Lender advances monies to Debtors and Debtors use such monies other than in accordance with or pursuant to the terms or provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order.

(b)    Additional Terms of Postpetition Debt.

(i)    Maximum Credit.  Without the written consent of Lender to different amounts:  the maximum principal amount of Aggregate Debt shall not exceed the lesser of (A) the Borrowing Base, exclusive of Postpetition Charges and Allowable § 506(b) Amounts and (B) $15,000,000.  The Aggregate Debt may exceed such limits by $500,000 in

-4-

Lender's sole and absolute discretion, and may exceed such limits by more than $500,000 with the consent of Lender and Participants. No other loans shall be made under the Prepetition Loan Agreement or this Order other than the Postpetition Debt as set forth herein.

(ii)     Interest. The Postpetition Debt shall bear interest at a per annum rate equal to the "Prime Rate" (as that term is defined in the Prepetition Loan Agreement) plus 2.75%. The default rate for the Postpetition Debt, as provided in Section 1.50(c) of the Prepetition Loan Agreement, shall be at a per annum rate equal to the interest rate otherwise payable plus 2% in excess of such rate.

(iii)     Postpetition Charges. Postpetition Charges shall include a closing fee of $100,000, $40,000 of which was paid to Lender upon entry of the Interim Order, and $60,000 of which shall be waived if the Aggregate Debt has been indefeasibly paid in full by December 31, 2004.

(iv)     Mandatory Payments.     Other than with respect to proceeds of Prepetition Senior Lender Collateral, Debtors are required to make non-refundable prepayments of amounts advanced pursuant to this Order for 100% of (A) any insurance or condemnation proceeds received in connection with a casualty event, condemnation or other loss and (B) any net cash proceeds (i.e., cash or cash equivalents less sale costs) of asset sales or other dispositions out of the ordinary course of business.

(v)     Conditions to Each Advance of Postpetition Debt. The making of each advance of Postpetition Debt shall be conditioned upon (A) no Event of Default existing; (B) any order of the Court relating to cash collateral, financing, the Aggregate Collateral, cash management and the Debtors' use of cash (including this Order) remaining in full force and effect and not having been stayed, reversed, vacated or otherwise modified; (C) Lender having received a borrowing request in form and substance satisfactory to Lender; (D) all Postpetition Charges then due and payable to Lender having been paid; (E) Debtors' continued retention of one or more liquidation professionals to assist in the liquidation of Debtors' accounts receivable and inventory; and (F) the Termination Date not occurring.

(vi)     Guarantor Reaffirmations. The Guarantee and related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Lender pursuant to Code § 363 or additional financing by Lender pursuant to Code § 364. The Guarantors shall be and shall remain liable for the guaranteed obligations under the Guarantee, including, without limitation, all Postpetition Debt. In accordance with the Interim Order, Debtors caused the Guarantors to reaffirm the Guarantee and related security documents in form and substance satisfactory to Lender, including confirmation of the Guarantors' obligations to guarantee repayment in full of all Aggregate Debt and waiver by the Guarantors of any defenses and counterclaims relating to the Guarantee and related security documents. With respect to the Guarantors, Lender shall have the right to apply any and all proceeds received from the Guarantors to reduce the

Prepetition Debt and Allowable § 506(b) Amounts, and the Postpetition Debt at such times and in such manner as determined by Lender in its sole discretion.

(c)    Superpriority Administrative Expense Status; Postpetition Liens. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Case that are incurred under any provision of the Code, including claims arising under Code § 364(c)(1) against the proceeds of claims arising under chapter 5 of the Code. In addition, Lender is hereby granted the Postpetition Liens to secure the Postpetition Debt.    The Postpetition Liens: (1) are and shall be in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and (d), are and shall be First Priority Liens (subject only to the Prepetition Liens and Permitted Liens) without any further action by Debtors or Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; and (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, Debtors are authorized and directed to execute and deliver to Lender such financing statements, mortgages, instruments and other documents as Lender may deem necessary or desirable from time to time.

(d)    Professional Fee Carveout Terms. With respect to the Carveout, (1) the aggregate amount of the Carveout shall not exceed $100,000 solely for amounts incurred by Debtors' counsel, Shaw Gussis Fishman Glantz Wolfson & Towbin LLC ("Shaw Gussis"), by Committee counsel, Piper Rudnick LLP ("Piper Rudnick"), and by the U.S. Trustee after the Termination Date, plus an additional $150,000 for amounts accrued prior to the Termination Date, provided that the $100,000 post-Termination Date portion of the Carveout may be applied to amounts accrued prior to the Termination Date; (2) all prepetition retainers and property of the estate not subject to an unavoidable lien in favor of Lender shall be used before any payments are made from proceeds of the Postpetition Debt or the Aggregate Collateral; provided, however, that the prepetition retainer received by Debtors' counsel, Shaw Gussis, may be held until the Termination Date, at which time such retainer shall be used to partially fund the $100,000 post-Termination Date portion of the

Carveout described in subsection (1) above; (3) upon the Termination Date, and with the exception of the portion of the Carveout which Lender has agreed to fund on or after the Termination Date, Lender shall have no obligation to fund any fees or expenses accrued on or after the Termination Date whether or not such fees and expenses were included in the Budget; (4) the Carveout shall not include fees or expenses incurred by any entity, including Debtors or the Committee and professionals retained by Debtors or the Committee, in connection with claims, actions or services adverse to Lender or Lender's interests in the Aggregate Collateral, including (i) preventing, hindering or delaying Lender's enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred, (ii) using or seeking to use Cash Collateral or selling any other Aggregate Collateral without Lender's consent, (iii) incurring indebtedness without Lender's consent or (iv) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Lender; provided, that, up to $20,000 of the Carveout may be used by Debtors' and the Committee's professionals to investigate the extent, validity and priority of the Prepetition Debt and Prepetition Liens; and (5) the professionals receiving the Carveout must waive any rights they may have to surcharge the Aggregate Collateral pursuant to Code § 506(c). For the avoidance of doubt, Lender shall provide Postpetition Debt for all accrued professional fees and expenses incurred prior to the Termination Date, subject only to allowance of such amounts and the aggregate line items set forth in the Budget for periods prior to the Termination Date. Nothing herein shall be construed as Lender's consent to the allowance of any fees, costs or expenses of the professionals that Debtors or Committee retain or shall affect the right of Lender to object to the allowance and payment of such fees, costs or expenses. Notwithstanding the occurrence of the Termination Date and the indefeasible and final payment in full of the Aggregate Debt, Lender shall be entitled to hold cash collateral in an amount equal to the Carveout (i.e., $250,000). Such cash collateral (i.e., $250,000) shall be returned to Debtors upon the termination of Lender's obligations with respect to the Carveout (i.e., upon (i) joint written confirmation by Shaw Gussis, Piper

-7-

Rudnick and counsel for Prepetition Senior Lender that Lender shall have no further obligations in respect of the Carveout; (ii) provision of a deposit to the U.S. Trustee in an amount acceptable to the U.S. Trustee from such cash collateral; and (iii) joint written confirmation by Shaw Gussis, Piper Rudnick and counsel for Prepetition Senior Lender that none of the surcharge provisions of Code § 506(c) shall be imposed on Lender or Lender's interests in the Aggregate Collateral).

        4.    <u>Termination of Right To Use Cash Collateral and To Incur Postpetition Debt</u>.

        (a)    <u>Termination Date</u>. Unless extended by the Court upon the written agreement of Lender, this Order and Debtors' authorization to use Cash Collateral and incur Postpetition Debt pursuant to this Order will automatically terminate on the Termination Date without further notice or order of Court. During the pendency of any motion filed by Lender alleging lack of adequate protection of its interests in the Aggregate Collateral, or during the pendency of any Event of Default for which a Cure Period is applicable, Lender shall have no obligation to consent to the use of Cash Collateral by, or advance any Postpetition Debt to, Debtors.

        (b)    <u>Rights Upon Termination</u>. Upon the Termination Date, without further notice or order of the Court, at Lender's election: (1) the Aggregate Debt shall be immediately due and payable; (2) Lender shall be entitled to apply or set off any cash in Lender's possession or control to the Aggregate Debt in accordance with Paragraph 5(d) of this Order, until such Aggregate Debt is indefeasibly and finally paid in full; and (3) Debtors shall be prohibited from using any Cash Collateral for any purpose other than application to the Aggregate Debt in accordance with Paragraph 5(d) of this Order, until such Aggregate Debt is indefeasibly and finally paid in full. If the Aggregate Debt is not paid in full on or before the Termination Date, upon five (5) business days written notice to Debtors and any Committee, the automatic stay will be deemed lifted with respect to the Aggregate Collateral and Lender shall be entitled to exercise all rights and remedies available to it under the Prepetition Loan Agreement, related documents and applicable nonbankruptcy law; and Debtors shall be authorized and directed to take such actions as Lender may deem necessary or desirable from time to time to assist Lender in exercising the rights and remedies available

to Lender under the Prepetition Documents and applicable nonbankruptcy law with respect to the Aggregate Collateral, including, without limitation, the surrender of such Aggregate Collateral to Lender.

     5.    <u>Adequate Protection of Interests of Lender in the Aggregate Collateral and the Aggregate Liens</u>.  As adequate protection of the interests of Lender in the Aggregate Collateral and the Aggregate Liens:

     (a)    <u>Priority of Prepetition Liens/Allowance of Lender's Claim</u>. Subject to Paragraph 7(a) herein, (1) The Prepetition Liens shall constitute First Priority Liens (subject only to Permitted Liens); (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law; and (4) Lender's claim with respect to the Prepetition Debt shall for all purposes constitute an allowed secured claim within the meaning of Code § 506 in an amount not less than $11,184,250.78.  Pursuant to the Interim Order and subject to Paragraph 7(a) herein, Debtors have waived and released any and all claims and causes of action they may assert against Lender or the Aggregate Collateral, including any right to challenge the Prepetition Debt and the Prepetition Liens.

     (b)    <u>Replacement Liens</u>.  Lender is hereby granted the Replacement Liens as security for payment of the Prepetition Debt to the extent the proceeds of the Primary Prepetition Collateral are less than the amount set forth in Paragraph D of this Order.  The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be First Priority Liens (subject only to Permitted Liens) that are properly perfected, valid and enforceable without any further action by Debtors or Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case.  Notwithstanding the foregoing, Debtors are authorized and directed to execute and deliver to Lender such financing statements, mortgages, instruments and other documents as Lender may deem necessary or desirable from time to time.

(c)   Allowed Code § 507(b) Claim. If and to the extent the adequate protection of the interests of Lender in the Aggregate Collateral granted to Lender pursuant to this Order proves insufficient, Lender shall have an allowed claim under Code § 507(b), subject only to the Carveout, in the amount of any such insufficiency, with priority over all costs and expenses of administration of the Case (other than Lender's claims under Code § 364) that are incurred under any provision of the Code, including Code §§ 503(b), 506(c), 507(a) or 552(b).

(d)   Application of Cash Collateral. Lender is authorized to apply all Cash Collateral now or hereafter coming into Lender's possession or control as follows: (1) first, the payment of Prepetition Debt, including principal, interest, fees, costs, Allowable § 506(b) Amounts, the cash collateralization of all Letters of Credit issued and outstanding under the Prepetition Loan Agreement (at 105% of the face value of such Letters of Credit) and other charges; (2) second, to payment of Postpetition Charges; and (3) third, to payment of Postpetition Debt.

(i)   All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to: (A) object solely to such applications to Allowable § 506(b) Amounts under and in accordance with Paragraph 6(a) of this Order; and (B) determine, no later than ninety (90) calendar days after any application, that such application did not result in the payment of any unsecured prepetition claim of Lender. Any amounts disgorged in connection with any such objection or determination shall be first applied to repay Postpetition Debt, provided that such amounts may only be so applied in an amount equal to the aggregate amount of Postpetition Debt extended to Debtors at any time at which the Aggregate Debt equal or exceeds the Prepetition Debt. All such applications to Postpetition Debt shall be final and not subject to challenge by any person, including any Trustee.

(ii)   Any applications by Lender to cash collateralize the Letters of Credit shall be irrevocable, indefeasible and not subject to disgorgement under any provision of the Code, including, without limitation, Code § 1129(b). Debtors shall not have any property interests in the cash collateral held by Lender in respect of the Letters of Credit, but Debtors shall have a contractual right to cause such cash collateral to be applied against any draws made against the Letters of Credit or any fees, charges and interest that accrue thereon, and, in the event no Letters of Credit remain outstanding, and all fees, charges and interest accrued thereon have been indefeasibly satisfied, Lender shall apply any remaining funds held to cash collateralize the Letters of Credit in accordance with this Paragraph 5(d).

(e)     <u>Prohibition Against Use of Cash Collateral</u>. No other order shall be entered in the Case authorizing Debtors to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363 for the use of such Cash Collateral:  (1) Lender has consented to such order; (2) there is no Postpetition Debt outstanding at the time of the entry of such an order, and no obligation of Lender to extend additional Postpetition Debt; or (3) such Cash Collateral is first used to immediately pay the Postpetition Debt in full. Following the Termination Date and the indefeasible and final payment in full of the Aggregate Debt, Debtors are authorized to use cash collateral in accordance with the Budget.

(f)     <u>Prohibition Against Additional Debt</u>. No order shall be entered in the Case authorizing Debtors to incur debt secured by a lien which is equal to or superior to the Aggregate Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364 for the incurrence of such debt:  (1) Lender has consented to such order; (2) there is no Postpetition Debt outstanding at the time of the entry of such an order; or (3) such credit or debt is used to immediately pay the Postpetition Debt in full.

(g)     <u>No Cramdown</u>. Absent the express written consent of Lender, no order shall be entered in the Case confirming a plan which does not provide for the payment of the outstanding Aggregate Debt in full in cash on or before the effective date thereof.

(h)     <u>Right to Credit Bid</u>. Pursuant to Code § 363(k), Lender shall have the right to use Aggregate Debt to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

(i)     <u>Waiver of Right to Return/Consent to Setoff</u>. Debtors hereby waive their rights: (1) to return any of the Aggregate Collateral pursuant to Bankruptcy Code § 546(g); and (2) to consent to setoff pursuant to Bankruptcy Code § 553.

(j)     <u>Indemnification</u>. Debtors shall continue to indemnify and hold harmless Lender pursuant to Section 11.5 of the Prepetition Loan Agreement and as further described therein.

(k)    No Marshaling.    Effective upon entry of this Order, neither Lender or any Guarantor, nor any of the Aggregate Collateral or any assets of any Guarantor, shall be subject to the doctrine of marshaling.

6.    Miscellaneous Provisions.

(a)    Notice of and Objections to Allowable § 506(b) Amounts. Lender shall provide Debtors' counsel, counsel for the Committee, counsel for the Prepetition Senior Lender and the United States Trustee with copies of all invoices sent to Lender (edited to delete any attorney-client or other confidential information but including detailed statements of services rendered) with respect to both the attorneys' fees and related costs and expenses asserted as Allowable § 506(b) Amounts and the fees and expenses of the financial advisor retained by Lender that are asserted as Allowable § 506(b) Amounts. Any such party may object to the reasonableness of any such fees, costs and expenses. However, any such objection shall be forever waived and barred unless within twenty (20) days of receipt of the invoice to which the objection relates: (1) the objection is filed with the Court and served upon Lender; and (2) the objection describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis of the objection to each such item or category of fees, costs and expenses. Any hearing on an objection to the fees, costs and expenses of Lender set forth on any invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs and expenses which are the subject of such objection. Notwithstanding this Paragraph 6(a), the United States Trustee shall be entitled to object to Allowable § 506(b) Amounts asserted by the Lender on any grounds.

(b)    Force and Effect of Prepetition Documents. Except as modified herein, and subject to the other provisions of this Order and the Code, the Prepetition Documents, and the terms and provisions thereof, shall remain in full force and effect with respect to the Aggregate Debt. To the extent there exists any conflict among the Motion, the Prepetition Documents and the terms of this Order, this Order shall govern and control. Lender shall make copies of the Prepetition Documents available for viewing by any party in interest upon request.

-12-

(c)   Modification of Stay.   The automatic stay of Code § 362 is hereby modified with respect to Lender to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit Lender to exercise its rights contemplated by Paragraph 4(b) above.

(d)   Financial Information.   Debtors are hereby directed to deliver to Lender such financial and other information concerning the business and affairs of Debtors and any of the Aggregate Collateral as may be required pursuant to the Prepetition Documents or as Lender shall reasonably request from time to time, including weekly information as to (1) Debtors' accrued, unpaid expenses and weekly reports delivered each Wednesday showing actual results compared to the Budget and (2) a description of Debtors' progress with respect to Debtors' efforts to sell its assets and collect its accounts receivable. Debtors are also directed to allow Lender access to its premises for the purpose of enabling Lender to inspect and audit the Aggregate Collateral and Debtors' books and records. Such access for such purpose shall be permitted during normal business hours and upon forty-eight (48) hours' notice or such shorter notice as may be provided in the Prepetition Documents; provided, however, that if Lender alleges fraud or gross mismanagement, Lender shall be permitted access to the premises for such purpose at any time without notice.

(e)   Insurance.   Debtors are directed to promptly deliver to Lender evidence, satisfactory to Lender, that the Aggregate Collateral is insured for the full replacement value thereof, that all insurance policies required by the Prepetition Documents or obtained in connection with the Aggregate Collateral are maintained in full force and effect and that Lender is named as loss payee on all such property insurance policies and named as additional insured on all such liability policies as its interests may appear.

(f)   No Waiver.   This Order shall not constitute a waiver by Lender of any of its rights under the Prepetition Documents, the Code or other applicable law, including without limitation: (1) its right to later assert that, notwithstanding the terms and provisions of this Order, any of its interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e); or (2) its right to later assert a claim under Code § 507. Lender's failure, at any time or times hereafter, to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall not waive,

affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith. No delay on the part of Lender in the exercise of any right or remedy under this Order shall preclude any other or further exercise of any right or remedy. Lender shall not be deemed to have suspended or waived any of its rights or remedies unless such suspension or waiver is in writing, signed by a duly authorized officer of Lender and directed to Debtors.

(g)     "Responsible Person".   Effective upon entry of this Order, Debtors, for their estates, hereby waives any claims or other causes of action it may now or hereafter have against Lender arising from or related to an allegation that Lender, by accepting the Budget submitted to it by Debtors or by taking any other actions pursuant to this Order, (1) is or should be deemed to be in control of the operations or liquidation of Debtors; or (2) is or should be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtors.

(h)     Conflicts With Other Orders.   To the extent this Order, together with all amendments, modifications and supplements, conflicts with any other orders entered in the Case, this Order shall control.

(i)     Key Employee Retention Program.   To the extent Debtors seek to make payments to employees pursuant to a key employee retention program (pursuant to the order of the Court authorizing such payments), such payments shall be subject to the consent of Lender, which consent shall not be unreasonably withheld.

7.     Binding Effect.

(a)     Stipulations and Findings.   Effective upon entry of this Order, the stipulations and findings contained in Paragraphs C and D of this Order and the provisions of Paragraph 5(a) of this Order shall be binding on all parties in interest in the Case and their respective successors and assigns, including any Trustee, subject only to the right of any Committee or any other party in interest other than Debtors or Prepetition Senior Lender to file and serve an appropriate pleading objecting to such stipulations, findings or provisions on or before ninety (90) days from the date of entry of the Interim Order (or a Chapter 7 Trustee shall have ninety (90) days after the date of his or her appointment to file

such pleadings). The Court reserves jurisdiction to extend such time periods on notice and motion for good cause shown.

(b)     Order. Except as provided in Paragraph 7(a) herein, this Order shall be binding on all parties in interest in this Case and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If, in accordance with Code § 364(e), a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not effect (1) the stipulations and findings contained in Paragraphs C and D of this Order; and (2) the priority, validity, enforceability or effectiveness of any lien, security interests or any other benefit or claim authorized hereby with respect to any Cash Collateral used or Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third parties are intended to be, or shall be deemed to be, third party beneficiaries of this Order.

(c)     Survival. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case (1) confirming any chapter 11 plan, (2) converting the Case to a case under chapter 7, or (3) dismissing the Case. The terms and provisions of this Order, including the rights granted Lender under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Aggregate Debt and other Obligations are indefeasibly paid in full and discharged.

8.     Adequate Protection of Interests of Prepetition Senior Lender in the Prepetition Senior Lender Collateral. As adequate protection of the interests of Prepetition Senior Lender in the Prepetition Senior Lender Collateral:

(a)    Prepetition Senior Lender Replacement Liens.    Prepetition Senior Lender is hereby granted the Prepetition Senior Lender Replacement Liens to secure the amount of any diminution in the value of the Prepetition Senior Lender Collateral or the Prepetition Senior Lender's subordinated interest in the Primary Prepetition Collateral since the Filing Date.  The Prepetition Senior Lender Replacement Liens:  (1) are and shall be in addition to the liens of the Prepetition Senior Lender in the Prepetition Senior Lender Collateral; (2) are and shall be First Priority Liens (subject only to the Postpetition Liens, Prepetition Liens, Replacement Liens and Permitted Liens) that are properly perfected, valid and enforceable without any further action by Debtors or Prepetition Senior Lender, and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case.  Notwithstanding the foregoing, Debtors are authorized and directed to execute and deliver to Prepetition Senior Lender such financing statements, mortgages, instruments and other documents as Prepetition Senior Lender may deem necessary or desirable from time to time.  After the Termination Date and Lender's indefeasible and final payment in full, Debtors are authorized and directed to execute and deliver to Prepetition Senior Lender one or more bank account agency agreements as Prepetition Senior Lender may deem necessary or desirable from time to time.

(b)    Code § 507(b) Claim.    If and to the extent the adequate protection granted to Prepetition Senior Lender pursuant to this Order proves insufficient, Prepetition Senior Lender shall have a superpriority administrative claim under Code § 503(b) and Code § 507(b), junior to the Postpetition Liens, the Replacement Liens, the Prepetition Liens, the Permitted Liens and all other liens and claims of Lender, including any claims of any such party under Code §§ 503, 507(b) or 364.  In no event shall such claim be paid from proceeds of actions arising under Code §§ 544, 547, 548, 549, 550 and 553, or any other unencumbered assets.

(c)    Intercreditor Agreement.    Nothing contained herein shall be deemed to affect the respective rights and obligations of Prepetition Senior Lender and Lender under the Intercreditor Agreement.

-16-

_____

Honorable Jack B. Schmetterer
United States Bankruptcy Judge

Dated: November 17th, 2004

Prepared jointly by: Shaw Gussis Fishman Glantz Wolfson & Towbin LLC and Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd.

## EXHIBIT A

## DEFINED TERMS AND RULES OF CONSTRUCTION

### *Defined Terms*

1.     ***Aggregate Collateral.***  Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.     ***Aggregate Debt.***  Collectively, the Prepetition Debt and the Postpetition Debt.

3.     ***Aggregate Liens.***  Collectively, the Prepetition Liens, the Replacement Liens, and the Postpetition Liens.

4.     ***Allowable § 506(b) Amounts.***  All fees, costs, expenses, interest at the applicable default rate and other charges due or coming due under the Prepetition Documents with respect to the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget) to the extent allowable under Code § 506(b), including all reasonable out-of-pocket filing and recording fees, attorneys' and paralegals' fees and expenses, external and internal audit fees and expenses, closing fees, Letter of Credit Fees, and all other costs and expenses incurred by Lender under the Prepetition Documents with respect to the Prepetition Debt, including such fees, costs and charges incurred in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Lender in and in connection with the Case.

5.     ***Audit Fees.***  An audit fee of $650 per person, plus out-of-pocket expenses, is payable by Debtors to Lender for each day that Lender incurs such expense.

6.     ***Blocked Accounts.***  The "Blocked Accounts" (as that term is defined in the Prepetition Loan Agreement), and such other blocked accounts as may be established among Lender, Debtors and Debtors' postpetition banks.

7.     ***Borrowing Base.***  The "Borrowing Base" (as that term is defined in the Prepetition Loan Agreement).

8.     ***Budget.***  The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, for different amounts or different periods, all as may be agreed to by Lender in writing from time to time, and which must include projections and a cash receipts and disbursement schedule through and including December 31, 2004.

9.     ***Carveout.***  For the purposes of enabling Debtors' estates and the Committee to pay allowed fees and disbursements of professionals as may be awarded from time to time pursuant to Code § 330, an aggregate amount subject to the terms and provisions of Paragraph 3(d) of this Order, including all prepetition retainers.

10.    **Case**.    Debtors' jointly-administered chapter 11 cases or any superseding chapter 7 cases of Debtors.

11.    **Cash Collateral**.    All "cash collateral," as that term is defined in Code § 363(a), in which Lender has an interest, all deposits subject to setoff rights in favor of Lender, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable. To the extent any such cash collected or received is not clearly identifiable as attributable to Prepetition Collateral or Postpetition Collateral, such cash shall be deemed to be proceeds of Prepetition Collateral.

12.    **Code**.    The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute.    Unless otherwise indicated, all statutory section references in this Order are to the Code.

13.    **Committee**.    The Official Committee of Unsecured Creditors appointed to represent unsecured creditors in the Case pursuant to Code § 1102.

14.    **Cure Period**.    (a) With respect to the occurrence of an Event of Default under subparagraphs (d) through (h), (k), (l) or (n) of the definition of such term, none; (b) with respect to the occurrence of an Event of Default under subparagraph (c) of the definition of such term, five (5) business days for the three (3) weeks following the Filing Date; and (c) with respect to any other Event of Default, two (2) business days following Lender's written notice to Debtors' counsel, via facsimile or overnight mail, of the occurrence of such Event of Default (provided, however, that during such two-day period Lender shall have no obligation to permit Debtors to use Cash Collateral or to incur Postpetition Debt).

15.    **Debtors**.    Collectively, Hedstrom Corporation; Ero, Inc.; Ero Industries, Inc.; Ero Canada, Inc.; and Priss Prints, Inc.

16.    **Event of Default**.    Any one or more of the following:  (a) Debtors commit any Event of Default under Section 10.1 of the Prepetition Loan Agreement (other than by reason of Section 10.1(h) of the Prepetition Loan Agreement, or by the existence of any other Event of Default under the Prepetition Loan Agreement that existed prior to the Filing Date and of which Lender had actual knowledge); (b) Debtors fail to perform any of their obligations in strict accordance with the terms of this Order (including, Paragraph 3(b)(iii) hereof); (c) Debtors fail to comply with the Financial Covenant; (d) Debtors, without Lender's consent, seek the use of Cash Collateral; (e) Debtors, without Lender's consent, file a motion to incur debt secured by a lien with priority equal to or superior to the Postpetition Liens or which is given superpriority administrative expense status under Code § 364(c); (f) notice of a Code § 363 sale of all or part of the Aggregate Collateral is given which sale has not been consented to by Lender; (g) Debtors' removal or other loss of any key management; (h) Debtors file a chapter 11 plan that is not acceptable to Lender; (i) deadlock among any of the board of directors of Debtors; (j) any representation or warranty made by Debtors in any certificate, report or financial statement delivered to Lender proves to have

been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (k) the Case is converted to one or more cases under chapter 7 of the Code; (l) a Trustee is appointed or elected in the Case, or an examiner with the power to operate the Debtors' business is appointed in the Case; (m) Debtors terminate the engagement of Shaw Gussis without the written consent of Lender; or (n) Debtors fail to perform with respect to their obligation set forth in Paragraph 3(b)(v)(E) herein.  Lender shall have the exclusive right to assert or waive any Event of Default.

      17.    **Filing Date**.  October 18, 2004.

      18.    **Financial Covenant**.  In addition to all other obligations hereunder, each expense line item set forth in the Budget (excluding expense line items for which the amount budgeted and the actual amount incurred are less than $100,000) shall not be in excess of 110% of the amount set forth in the Budget, and aggregate receipts set forth in the Budget shall not be less than 90% of the aggregate budgeted receipts, tested weekly (commencing with the second week after the Filing Date) on a rolling four-week basis (provided that for the second and third weeks after the Filing Date, such line items shall be tested on a rolling two- and three-week basis, respectively, and expense line items shall not be in excess of 115% of the amount set forth in the Budget, and aggregate receipts set forth in the Budget shall not be less than 85% of the aggregate budgeted receipts).  Lender may waive Debtors' breach of the Financial Covenant in writing at any time.

      19.    **First Priority Liens**.  Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to avoidance or subordination pursuant to any provisions of the Code or applicable nonbankruptcy law.

      20.    **Guarantors**.  Collectively, Ero, Inc., Ero Industries, Inc., Priss Prints, Inc., Impact, Inc., Ero Marketing, Inc. and Ero Canada, Inc.

      21.    **Guarantee**.  Collectively, that certain Guarantee executed by Ero, Inc., Ero Industries, Inc., Priss Prints, Inc., Impact, Inc., Ero Marketing, Inc. and Ero Canada, Inc. in favor of Lender dated as of July 31, 2001 and reaffirmed as of May 13, 2004 and October 29, 2004 pursuant to Paragraph 3(b)(vi) of the Interim Order.

      22.    **Intercreditor Agreement**.  That certain Intercreditor Agreement dated as of July 31, 2001 between Lender and Prepetition Senior Lender, pursuant to which Lender and Prepetition Senior Lender agreed that (a) Lender's Prepetition Liens on the Prepetition Senior Lender Collateral are subordinate to the liens of Prepetition Senior Lender on such Prepetition Senior Lender Collateral and that (b) Lender's Prepetition Liens on the Primary Prepetition Collateral are senior to the liens of Prepetition Senior Lender on such Primary Prepetition Collateral.

23. **Interim Order.** The Order Authorizing Debtors To: (A) Use Cash Collateral on an Interim Basis; (B) Incur Postpetition Debt; and (C) Grant Adequate Protection and Provide Security and Other Relief to Congress Financial Corporation (Central) as Lender, entered in this Case on October 19, 2004, provisionally authorizing Debtors to use Cash Collateral and incur Postpetition Debt according to the terms thereof.

24. **Letters of Credit.** The letters of credit issued pursuant to the Prepetition Loan Agreement that are deemed to have been issued pursuant to this Order.

25. **Letter of Credit Fee.** A Letter of Credit Fee is payable monthly, in an amount equal to 3.75% per annum, for any Letters of Credit outstanding.

26. **Motion.** The Motion, filed by Debtors, seeking entry of this Order.

27. **Obligations.** The "Obligations" (as that term is defined in the Prepetition Loan Agreement).

28. **Participants.** GMAC Commercial Finance LLC (successor by merger to GMAC Commercial Credit LLC), Siemens Financial Services, Inc. and General Electric Capital Corporation.

29. **Permitted Liens.** The Permitted Liens are: (a) third-party liens that are (i) not subordinated by agreement with Lender prior to the Filing Date or otherwise subordinated under Code § 510 and (ii) non-avoidable, valid, properly perfected and enforceable as of the Filing Date, (b) the liens of Prepetition Senior Lender on the Prepetition Senior Lender Collateral, (c) the Carveout, and (d) the claim of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a).

30. **Postpetition Charges.** All fees, costs, expenses, interest and other charges due or coming due in connection with the Postpetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), including all reasonable out-of-pocket filing and recording fees, attorneys' fees and paralegals' fees and expenses, external and internal Audit Fees and expenses, closing fees, Letter of Credit Fees, Service Fees, consultant fees and expenses, and all other costs and expenses incurred by Lender in connection with the Postpetition Debt and in accordance with the terms of the Prepetition Loan Agreement. Prior to the Termination Date, with the exception of the liquidation professional retained by Debtors with respect to Debtors' inventory, no Postpetition Charges shall be paid from the Prepetition Senior Lender Collateral.

31. **Postpetition Collateral.** All of the real and personal property of Debtors and Guarantors of any description whatsoever, wherever located and whenever arising or acquired (including after-acquired assets), including all cash, accounts, inventory, equipment, contracts, real property, fixtures, intellectual property (including trademarks), investment property, chattel paper, general intangibles (excluding causes of action arising under Code §§ 544, 547, 548, 549, 550 and 553), any recoveries by Debtors pursuant to Code § 506(c), and all leaseholds, and all proceeds, rents, issues, profits and products, whether

tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing, and all other "Collateral" (as that term is defined in the Prepetition Documents), subject only to the Permitted Liens.

32.    ***Postpetition Debt***.  (a) All indebtedness or Obligations of Debtors to Lender incurred on or after the Filing Date pursuant to this Order or otherwise, including any advances made by Lender to pay Allowable § 506(b) Amounts <u>plus</u> (b) the Postpetition Charges.

33.    ***Postpetition Liens***.  First Priority Liens in the Aggregate Collateral, subject to only Permitted Liens and the Prepetition Liens.

34.    ***Prepetition Collateral***.  All of the "Collateral" (as that term is defined in the Prepetition Documents) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

35.    ***Prepetition Debt***.  (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all fees, costs, interest and expenses, <u>plus</u> (b) all Allowable § 506(b) Amounts.  For the avoidance of doubt, the Prepetition Debt shall include the obligations of Hedstrom Corporation pursuant to that certain Guarantee dated as of July 31, 2001 relating to certain financial accommodations provided by Lender to Backyard Products Ltd.

36.    ***Prepetition Documents***.  The Prepetition Loan Agreement and related documents.

37.    ***Prepetition Liens***.  Lender's asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject to only Permitted Liens.

38.    ***Prepetition Loan Agreement***.  That certain Loan and Security Agreement dated as of July 31, 2001 between Hedstrom Corporation and Lender, as amended, modified and supplemented from time to time.

39.    ***Prepetition Senior Lender***.  Credit Suisse First Boston, as agent under the Prepetition Senior Lender Loan Agreement.

40.    ***Prepetition Senior Lender Collateral***.  That portion of the Prepetition Collateral in which Lender's Prepetition Liens are subordinate to the liens of Prepetition Senior Lender pursuant to the Intercreditor Agreement.  The Prepetition Senior Lender Collateral consists of the following Prepetition Collateral:  (a) equipment, (b) general intangibles, (c) real estate and (d) all other collateral (other than the Primary Prepetition Collateral), including all products and proceeds thereof.

41.    ***Prepetition Senior Lender Loan Agreement***.  That certain Credit Agreement dated as of July 31, 2001 by and between Hedstrom Corporation and Prepetition Senior Lender, as amended, modified and supplemented from time to time.

42.   ***Prepetition Senior Lender Replacement Liens.***   Liens in the Postpetition Collateral to the extent of and with the priority set forth in Section 8(a) herein.

43.   ***Primary Prepetition Collateral.***   That portion of the Prepetition Collateral in which Lender's Prepetition Liens are First Priority Liens pursuant to the Intercreditor Agreement, and that are not subject to subordination.  The Primary Prepetition Collateral consists of the following Prepetition Collateral:  all "Accounts and Inventory" (as that term is defined in the Intercreditor Agreement) and all products and proceeds thereof, including insurance proceeds relating thereto.

44.   ***Replacement Liens.***   First Priority Liens in the Postpetition Collateral granted to Lender pursuant to this Order, subject only to Permitted Liens.

45.   ***Service Fee.***   A Service Fee of $2,500 is payable by Debtors to Lender once a month.

46.   ***Termination Date.***   The earlier to occur of:  (a) the date on which proceeds of sales of Aggregate Collateral subject to Prepetition Liens and the advancement of Postpetition Debt are sufficient to repay all indebtedness under the Prepetition Loan Agreement and to repay the Postpetition Debt, (b) the date on which Lender provides, via facsimile or overnight mail, written notice to Debtors of the occurrence of an Event of Default (or, if any Cure Period is applicable with respect to such Event of Default, the expiration of such Cure Period); and (c) the date that is six (6) months after entry of this Order.

47.   ***Trustee.***   Any trustee appointed or elected in the Case.

### Rules of Construction

The terms "include," "including" and "or" as used herein are not limiting or exclusive.  Unless the context clearly requires otherwise, references to the plural include the singular, and references to the singular include the plural.  The words "hereof," "herein," "hereby," "hereunder" and similar terms refer to this Order as a whole and not to any particular provision.  Any reference herein to any person or entity shall be construed to include such person's or entity's successors and assigns.

## EXHIBIT B

### Budget

**(See Attached)**